Young & Co., Inc., Appellant, v. Heinz et al.

Argued April 24, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Roland A. McCrady* for appellant.

*S. G. Nolin,* and with him *Edgar D. Bell,* of *Smith, Buchanan, Scott & Gordon,* for appellee.

OPINION BY GAWTHROP, J., July 12, 1928:

Plaintiff, a corporation doing business as a real estate broker, sued to recover commissions alleged to be due it by defendants in connection with the sale of land of the latter. At the trial the court below entered

a compulsory non-suit and from the order refusing to take it off plaintiff appeals.

The evidence warrants the following statement of facts: Defendants owned, as tenants in common, several pieces of real estate in the City of Pittsburgh. They formed a partnership known as the Reliance Realty Company and filed a certificate under the Fictitious Name Act of June 28, 1917, P. L. 645, which set forth, inter alia, that the ''character of the business to be carried on or conducted under the name Reliance Realty Company is: Leasing, collecting of rents for and repairing of real estate owned by the heirs of H. J. Heinz, deceased, and the buying and selling of real estate for said persons,'' and that ''the name of the agent, if any, through which said business is to be carried on or conducted, with his address, is A. V. Crookston, 126 Anderson St., Pittsburgh, Pa.'' While the Reliance Realty Company was doing business as set forth under this certificate, J. C. Young, a real estate salesman for the plaintiff, called one of defendants on the telephone and asked him about certain property on Penn Avenue, Pittsburgh, owned by them. That defendant said, ''Mr. A. V. Crookston has charge of all our real estate. You call him.'' In February, 1924, Crookston called at plaintiff's office and asked J. A. Young, its treasurer, why plaintiff had not sold any of the Heinz homestead property on Penn Avenue and asked him to try and sell it. J. A. Young said that he would be glad to have a chance to sell the property. J. C. Young asked Crookston what commission plaintiff would receive and Crookston said that they (the Reliance Realty Company) would get five per cent., and that plaintiff's share of the commission would be three per cent. if it sold any part or all of the property. About March 1, 1924, J. W. McCarthy called at plaintiff's office regarding the purchase of a piece of ground which did not belong to defendants. On the following day J. C. Young suggested to McCarthy

that he buy and develop a piece of the land involved in this suit. McCarthy was interested and asked J. C. Young to get the facts regarding it. The latter then called Crookston on the telephone and told him that he had J. W. McCarthy interested in the property and asked for some facts regarding it. Crookston suggested a meeting with McCarthy on the ground and about March 10th J. C. Young, McCarthy and Crookston met on the property. Crookston promised to furnish a plan of the property, but when plaintiff did not receive it J. C. Young wrote a letter to the Reliance Realty Company, attention Mr. A. V. Crookston, requesting the plan mentioned. A day or so later Crookston took the plan to plaintiff's office. On the same day J. C. Young took it to McCarthy's home, met him and went over the plan. On the following day McCarthy and Crookston went to plaintiff's office and matters relating to the land, not necessary to be considered here, were discussed and Crookston agreed to have a new plan made, showing a proposed private roadway and street. On June 6, 1924, defendants entered into an agreement of sae with McCarthy for part of the land which had been under discussion, and on June 12, 1924, the conveyance was made for a consideration of $77,450.85, on which plaintiff claims a commission of three per cent., or $2,323.52. Plaintiff demanded a commission from Crookston on behalf of the Reliance Realty Company and was told that "they had worked the deal out themselves and were not going to pay us anything."

The reasons stated by the trial judge for granting the non-suit and for refusing to take it off were that the plaintiff showed no authority from the owners of the land to the Reliance Realty Company or to Crookston to employ an agent to procure a purchaser for the property sold; and that the appointing of an agent to procure a purchaser for land does not, without special authority, carry with it the right to ap-

point another person as agent to procure a purchaser. Deliman v. Greek Catholic Union, 275 Pa. 574, was relied upon as sustaining the ruling.

Upon full consideration, we have concluded that under the circumstances here disclosed a jury would be warranted in finding that Crookston had power to bind defendants to pay plaintiff a commission for procuring a purchaser; and that the entry of the non-suit and the refusal to strike it off were errors. As pointed out by appellant, the suit is brought against defendants as partners in the Reliance Realty Company, a separate entity created by them for the purpose of engaging, inter alia, in the business of buying and selling real estate. They made Crookston their general agent to carry on the business of the Realty Company, as appears by the certificate filed under the Fictitious Name Act of 1917, signed by all of defendants and duly sworn to, certifying to the world that A. V. Crookston was their agent to carry on the business therein described. By the terms of this instrument Crookston was more than a mere agent to obtain a purchaser for real estate, which defendants specifically put in the hands of the Realty Company for sale. We cannot sustain the contention of counsel for appellee that the Reliance Realty Company could not have sold any real estate of the parties without more specific authority. We regard Crookston's written authority to sell real estate, conferred by the certificate above mentioned, as a sufficient compliance with the Statute of Frauds enacted March 21, 1772, 1 Sm. L. 389. This brings us to the question whether under the circumstances disclosed Crookston had the power as agent of the defendants, to employ a real estate broker to procure a purchaser for the property sold. True there is no evidence of any specific authority in this respect. But the acts of an agent within the general scope of the business with which he is entrusted are binding upon his principal, and when it

is established by evidence that the agent had authority to transact the business out of which the controversy has grown, the principal may be held responsible, although the particular acts done are in excess of his private instructions: Thompson v. Barrow, 81 Pa. Superior Ct. 216, 221; Butler v. Maples, 76 U. S. 766. Every power carries with it, as an incident, where no limitations appear, the implied authority to do those things which are necessary and proper to be done in order to accomplish the object sought and which are usually done in the execution of a like authority: Mecham on Agency, Sec. 795. As Crookston was authorized to act generally for the Reliance Realty Company in making contracts for the sale of real estate belonging to defendants, the question whether his act in employing plaintiff was within the scope of the authority which his principal had caused or permitted him to appear to possess, is for a jury. In our opinion the decision in Deliman v. Greek Catholic Union, supra, is not in conflict with our conclusion. In that case the plaintiff had express knowledge of the limited authority of the agent with whom he dealt, which was held to bar him from recovering a claim from the principal which the agent was impotent to create. While Mr. Justice SCHAFFER cited with approval Bonwell v. Howes, 2 N. Y. Supp. 717, holding that an agent to sell land cannot, without special authority, bind his principal by the employment of a broker to effect the sale and a promise of commission, we do not regard that principle as controlling in the present case, because the evidence would warrant a finding that the agency of Crookston was essentially different from that in the Deliman case, in that it was not a special agency but one conferring upon him the management of the business of the Realty Company. As we view this case, it is not one in which the agent, Crookston, undertook to delegate to a sub-agent the performance of duties involving the personal trust and

confidence reposed in him. That he could not do. But the evidence would warrant a finding by a jury that he merely employed a broker to assist him in making a sale of some of the land the Realty Company held for sale, and that this was within the scope of his apparent authority as manager of the partnership business.

The order refusing to take off the judgment of compulsory non-suit is reversed, and the record is remitted for further proceedings.